J-S68033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DENNIS KREASHKO | : | |
| | : | |
| Appellee | : | No. 867 WDA 2019 |

Appeal from the Suppression Order Entered May 6, 2019
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s):  CP-03-CR-0000122-2018

BEFORE:   GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY GANTMAN, P.J.E.:                **FILED JANUARY 17, 2020**

Appellant, the Commonwealth of Pennsylvania, appeals from the order

entered in the Armstrong County Court of Common Pleas, which granted the

suppression motion of Appellee, Dennis Kreashko.[1]  We affirm.

In its opinions, the trial court accurately set forth the relevant facts and

procedural history of this case.  Therefore, we have no reason to restate them.

The Commonwealth raises one issue for our review:

> WHETHER THE TRIAL COURT ERRED WHEN IT SUPPRESSED
> THE EVIDENCE IN THIS MATTER, FINDING THAT
> [APPELLEE] HAD BEEN UNLAWFULLY DETAINED WHERE
> [APPELLEE'S] VEHICLE WAS LAWFULLY DETAINED AS IT

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth timely filed a notice of appeal on June 4, 2019, pursuant
to Pa.R.A.P. 311(d) (allowing Commonwealth to appeal as of right in criminal
case from pretrial order, where Commonwealth certifies in notice of appeal
that order will terminate or substantially handicap prosecution).

WAS IMPROPERLY LICENSED AND WAS GOING TO BE TOWED AND THE TRIAL COURT DID NOT CONSIDER [APPELLEE'S] CONSENT TO SEARCH THE TRUNK OF THE VEHICLE IN LIGHT OF THE FACT THAT HIS VEHICLE WAS GOING TO BE TOWED?

(Commonwealth's Brief at 4) (emphasis omitted).

When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are:

> We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. As long as there is some evidence to support them, we are bound by the suppression court's findings of fact. Most importantly, we are not at liberty to reject a finding of fact which is based on credibility.
>
> ***Commonwealth v. Goldsborough***, 31 A.3d 299, 305 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (internal citation omitted). "The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." ***Id.*** (internal citation omitted).

***Commonwealth v. Parker***, 152 A.3d 309, 315 (Pa.Super. 2016).

After a thorough review of the record, the Commonwealth's brief,[2] the applicable law, and the well-reasoned opinions of the Honorable James J. Panchik, we conclude the Commonwealth's issue merits no relief. The trial court opinions comprehensively discuss and properly dispose of the question presented. (***See*** Suppression Memorandum and Order, filed May 6, 2019, at

---

[2] Appellee declined to file a brief.

6-10; Rule 1925(a) Opinion, filed June 25, 2019, at 3-6) (finding: police engaged in continued detention of Appellee after initial stop of Appellee's vehicle was already complete; Appellee was not free to leave at this point; although Officer Antal testified that Appellee was asked to exit vehicle because it was going to be impounded, Deputy Gahagan's testimony and officers' conduct, after Appellee had exited vehicle, indicated that purpose was to continue to investigate whether Appellee was driving under influence; Appellee's pupils not responding to light, coupled with Appellee's movements in vehicle, did not provide particularized suspicion that exceeds mere hunch or possibility of criminal activity; court specifically found Officer Antal's testimony at preliminary hearing not credible, particularly where defense counsel did not have opportunity to cross-examine Officer Antal after Deputy Gahagan offered contradictory testimony more than one year later at suppression hearing; all additional information supporting Appellee's eventual arrest was discovered **after** officers removed Appellee from his vehicle; in other words, information officers had at time they asked Appellee to exit his vehicle was insufficient to support continued detention; further, officers decided to impound Appellee's vehicle only **after** they had already detained Appellee; Commonwealth offered no argument that Appellee's continued detention was lawful, so court properly suppressed all evidence as fruit of poisonous tree; Commonwealth did not raise, brief, or present any testimony at suppression hearing to support its now-proffered "inevitable discovery"

argument; moreover, Commonwealth did not establish that police followed standard policy for conducting inventory searches of impounded vehicles). Accordingly, we affirm based on the trial court's opinions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/17/2020

**IN THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA, )
                                      )
                                      )
                                      )
           vs.                       )     No. CP-03-CR-000122-2018
                                        )
DENNIS KREASHKO,              )
                Defendant.      )

# MEMORANDUM AND ORDER

2019 MAY -6 PM 1:46

BRENDA C. GEORGE
PROTHONOTARY AND
CLERK OF COURTS
ARMSTRONG COUNTY, PA

LEFT FOR ENTRY
OR FILING

IN THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, ) | |
| ) | |
| ) | |
| vs. ) | No. CP-03-CR-000122-2018 |
| ) | |
| DENNIS KREASHKO, ) | |
| Defendant. ) | |

# MEMORANDUM

**Panchik, P.J.**

Before the Court for disposition is Defendant Dennis Kreashko's Motion to Suppress. The Court held a hearing on March 7, 2019, and the motion is now ripe for decision. For the reasons that follow, the Court will grant the motion and suppress all evidence obtained after the initial traffic stop of Defendant's vehicle.

## I.     FACTS AND PROCEDURAL HISTORY

The findings of fact that follow are based on the testimony presented at the hearing on March 7, 2019, together with the testimony presented at the preliminary hearing February 13, 2018.[1]

1.     On September 27, 2017, at approximately 10:34 a.m., Officer David Antal of the Gilpin Township Police Department was on patrol along River

---

[1] The parties stipulated to the Court's receipt of the preliminary hearing transcript for purposes of disposing of Defendant's omnibus motion. The arresting officer in this case, Officer David Antal of the Gilpin Township Police Department, was not present at the hearing on March 7, 2019. He no longer works for that department and could not be located by the Commonwealth. Armstrong County Deputy Sheriff Robert Gahagan was the Commonwealth's only witness. The Court renders herein no opinion with regard to the propriety of the Commonwealth's reliance on the preliminary hearing transcript to satisfy its evidentiary burden. *See* Deft's Memorandum of Law in Opposition, 3/11/19, at p. 3.

Road/State Route 66 in Gilpin Township, Armstrong County. He was driving a marked police vehicle and was in full uniform.

2.      At that time, Officer Antal had been a police officer for approximately two years.[2]

3.      Officer Antal pulled off of River Road to monitor traffic. A silver Pontiac that was traveling behind Officer's Antal's vehicle continued on River Road. Noticing the loud exhaust of the Pontiac, Officer Antal pulled back onto River Road and followed the Pontiac for a short distance.

4.      As he followed, Officer Antal ran the license plate number on the Pontiac. The 911 dispatcher advised that the license plate was registered to a Chrysler convertible in the City of Pittsburgh. The registration also was expired.

5.      Officer Antal activated his emergency lights and conducted a traffic stop. Once stopped, he approached the driver of the vehicle, Defendant herein, and asked for his license, registration, and proof of insurance. Defendant provided the requested documents.

6.      While speaking with Defendant, Officer Antal did not see or smell any narcotics or contraband in the vehicle.

7.      Officer Antal returned to his police car to check the information Defendant had provided. While checking the information, Officer Antal noticed Defendant reaching from his seat into many different areas of the car.

---

[2] Officer Antal did not testify at the preliminary hearing regarding his experience making traffic stops or arrest for driving under the influence. There was limited discussion with regard to his experience dealing with felony and misdemeanor drug cases, *see* Prelim. Hrg. Transc., at 17:17-19:7.

8. Officer Antal discovered from 911 that the registration card identified Defendant as the owner of the vehicle, but was expired.

9. At the time of the traffic stop, Armstrong County Deputy Sheriff Robert Gahagan was serving papers in the vicinity of Gilpin Township. Deputy Gahagan heard on his radio that the stop was occurring and traveled to the scene to offer backup to Officer Antal.

10. After arriving on the scene, Deputy Gahagan also ran Defendant's license plate and discovered that it was associated with Chrysler convertible.

11. Officer Antal asked Deputy Gahagan if he would keep an eye on Defendant while he completed his investigation with the 911 dispatcher.

12. As he stood beside the rear of Defendant's vehicle, Deputy Gahagan observed Defendant moving around inside the vehicle, reaching into the glove box, console, and back seat. Defendant also appeared to be very nervous and "jumpy."

13. Deputy Gahagan asked Defendant to stop moving around. As Deputy Gahagan spoke with Defendant, he noticed that Defendant's voice cracked and that his eyes were unresponsive to light.

14. Either Deputy Gahagan or Officer Antal asked Defendant to get out of his vehicle. Their testimony is not consistent in this regard. Deputy Gahagan testified that both he and Officer Antal asked Defendant to get out so that standard field sobriety tests ("SFTSs") could be performed. Officer Antal testified that he asked Defendant to exit the vehicle because it was going to be impounded, a decision that in fact was not made until later.

3

15. Deputy Gahagan believed at that point that there was a possibility that Defendant was under the influence.

16. Prior to removing Defendant from his vehicle, neither Officer Antal nor Deputy Gahagan observed any drugs or weapons in plain view in Defendant's vehicle. They also did not smell any scent of drugs or alcohol on Defendant's person.

17. After Defendant exited the vehicle, Deputy Gahagan performed a "Terry" frisk to check for weapons. None were found. Deputy Gahagan felt an object in Defendant's right front pocket and asked him to remove it. Defendant removed a large wad of cash, approximately an inch thick. Deputy Gahagan placed the cash aside and continued with the frisk. Officer Antal asked Defendant what the money was for, and Defendant stated that it was his work money.

18. Deputy Gahagan performed the horizontal gaze nystagmus, heel to toe, and Rombert field sobriety tests, all of which took approximately 20 minutes. After completing several of the SFSTs, Deputy Gahagan believed that Defendant displayed signs of impairment.

19. At some point, Officer Antal had a discussion with Defendant regarding whether there was anything illegal in the car. Defendant stated on two occasions that there was not. He also told Officer Antal that he had drug-related charges pending and was out on bond.

20. Officer Antal then told Defendant that he would be impounding the car until he could get a search warrant. Defendant thereafter consented to a search of the vehicle.

21. No drugs or contraband were found in the interior cabin of the car.

22. At that point, Deputy Gahagan placed Defendant in the back of Officer Antal's police car. Defendant was not handcuffed at this point.

23. Because Officer Antal determined to impound the vehicle and have it towed away, Defendant requested that his tools be removed from the trunk. Upon retrieving them, the officers also found a Crown Royal bag containing narcotics.

24. Defendant then was placed under arrest and transported from the scene for processing. Deputy Gahagan remained at the scene with Defendant's vehicle until the towing company arrived.

25. Based on the evidence discovered during the traffic stop, police obtained a search warrant for Defendant's residence, where they found additional controlled substances and paraphernalia.

26. Defendant is charged by information filed March 29, 2018, with 1) possession of drug paraphernalia[3], 2) two counts of possession with intent to deliver a controlled substance[4], 3) possession of a controlled substance[5], 4) possession of

---

[3] 35 Pa. Stat. Ann. § 780-113(a)(32).
[4] 35 Pa. Stat. Ann. § 780-113(a)(30).
[5] 35 Pa. Stat. Ann. § 780-113(a)(16).

marijuana–small amount[6], 5) driving an unregistered vehicle[7], and 6) unauthorized use of registration plate.[8]

## II.  DISCUSSION

### A.  BURDEN OF PROOF

Where, as here, a criminal defendant files a motion to suppress evidence, the burden falls on the Commonwealth to prove that the evidence was not obtained in violation of the defendant's constitutional rights. *Commonwealth v. Enimpah*, 106 A.3d 695, 703 (Pa. 2014). *See also* Pa. R. Crim. P. 581(H).

### B.  ANALYSIS

Defendant argues in his motion that all evidence obtained after the initial stop of his vehicle should be suppressed because Officer Antal and Deputy Gahagan did not have the requisite reasonable suspicion to continue the detention after the purpose for the original stop had ceased. Defendant does not argue that the initial stop was unlawful. To dispose of the issue, the Court must determine 1) the nature of the continued engagement of Defendant after the purpose of the stop was fulfilled, and 2) whether, if such engagement constituted a detention, it was supported by adequate grounds.

After an otherwise lawful traffic stop is complete, reasonable suspicion of criminal activity must exist to justify a continued detention of the operator:

> [W]here the purpose of an initial traffic stop has ended and a
> reasonable person would not have believed that he was free to leave,
> the law characterizes a subsequent round of questioning by the police

---

[6] 35 Pa. Stat. Ann. § 780-113(a)(31)(i).
[7] 75 Pa. Cons. Stat. Ann. § 1301(a).
[8] 75 Pa. Cons. Stat. Ann. § 1372(1).

as an investigative detention or arrest. In the absence of either reasonable suspicion to support the investigative detention or probable cause to support the arrest, the citizen is considered unlawfully detained.

*Commonwealth v. By*, 812 A.2d 1250, 1256 (Pa. Super. Ct. 2002)(citation omitted).

*See also Rodriguez v. United States*, 135 S.Ct. 1609, 1616 (2015). The Court finds, and there does not appear to be any serious dispute, that Defendant continued to be subject to a detention after the initial traffic stop of his vehicle was complete. He clearly was not free to leave at this point. Although Officer Antal testified that Defendant was asked to get out of the vehicle merely because it was going to be impounded, Deputy Gahagan's testimony and the officers' conduct after Defendant exited the vehicle indicate that the purpose was to continue to investigate whether Defendant had been driving under the influence. Deputy Gahagan testified that the officers' intention in removing Defendant from the vehicle was to perform SFSTs because of the "possibility" that Defendant was driving under the influence. Defendant at this point was detained after the purpose for the initial traffic stop had been fulfilled, and the Court therefore must determine whether Officer Antal and Deputy Gahagan had sufficient reasonable suspicion of criminal activity. *See Commonwealth v. Cauley*, 10 A.3d 321, 327 (Pa. Super. Ct. 2010).

In determining whether "reasonable suspicion" exists, the Court applies the following principles set forth by the Pennsylvania Superior Court:

> Our Supreme Court has mandated that law enforcement officers, prior to subjecting a citizen to an investigatory detention, must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity. The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by

7

examining the totality of the circumstances to determine whether the officer who initiated the stop had a *"particularized and objective basis"* for suspecting the individual stopped. Thus, to establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

Although a police officer's knowledge and length of experience weigh heavily in determining whether reasonable suspicion existed, our Courts remain mindful that the officer's judgment is necessarily colored by his or her primary involvement in the often competitive enterprise of ferreting out crime. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. This inquiry will not be satisfied by an officer's hunch or unparticularized suspicion.

*Commonwealth v. Reppert*, 814 A.2d 1196, 1203-04 (Pa. Super. Ct. 2002)(internal

citations and quotations omitted)(emphasis in original).

Here, the record establishes that, prior to the officers ordering Defendant

from the vehicle, they had the following objective facts in their collective knowledge:

1) that Defendant had utilized a false license plate on his vehicle, 2) that

Defendant's real registration for the vehicle was expired, 3) that Defendant acted

nervously during his interactions with the officers while in the car, 4) that

Defendant's voice cracked while he was speaking, 5) that Defendant, from his

position in the front driver's seat, reached throughout the vehicle, 6) that

Defendant's eyes appeared to not respond to light as he moved into and out of the

shadowed areas of the car's cabin, and 7) that Defendant indicated that there was

nothing illegal in the car when asked by Officer Antal. The Court concludes that

these facts, taken together, did not objectively provide the officers with sufficient reasonable suspicion to continue the detention.

After initiating the stop of Defendant's vehicle, Officer Antal discovered that the license plate on the vehicle did not match its make and model and that Defendant's registration card, although for the right vehicle, was expired. Other than Defendant's reaching throughout the vehicle, Officer Antal had no other facts to suspect ongoing criminal activity. Nor did he testify that he suspected criminal activity or that in his experience, approximately two years as a police officer, Defendant's actions indicated a likelihood of criminal activity. Further, although Officer Antal testified that he removed Defendant from his vehicle because it was going to be impounded, Deputy Gahagan testified that the decision to impound the vehicle was not made until after Defendant had been removed from the vehicle, subjected to SFSTs, and was placed in the back of Officer Antal's police car. Deputy Gahagan further testified that both he and Officer Antal asked Defendant to exit the vehicle to perform SFSTs.

Deputy Gahagan further testified that Defendant's pupils did not respond to changes in light as he moved throughout the vehicle. Even assuming this is true, that fact coupled with Defendant's movements and traffic violation did not provide particularized suspicion that exceeds a mere hunch or possibility of criminal activity--here, driving under the influence. All of the additional information supporting Defendant's eventual arrest was discovered *after* Defendant was removed from his vehicle. Thus, considered objectively, the information that the

9

officers had at the time they asked Defendant to exit his vehicle so that they could question him, conduct a *Terry* frisk, and perform standard field sobriety tests was insufficient to support such a detention. *Compare Commonwealth v. Bozeman,* --- A.3d ---, 2019 WL 1088257, *8-*10 (March 8, 2019).

## III. CONCLUSIONS OF LAW

The continued detention of Defendant after the conclusion of the initial traffic stop of his vehicle was not supported by adequate reasonable suspicion that Defendant was then engaged in criminal activity. All evidence obtained thereafter by police must be suppressed.[9]

An appropriate order follows.

---

[9] In his omnibus motion, Defendant also seeks suppression of his statements made after exiting his vehicle and the evidence obtained from his apartment after police had obtained a search warrant. The Court need not consider these two aspects of Defendant's motion, as it already has concluded that all evidence obtained by police after Defendant's exit from his vehicle, including his statements and the evidence providing probable cause for the search warrant, is fruit of the illegal detention.

10

IN THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA, )
)
)
vs. ) No. CP-03-CR-000122-2018
)
DENNIS KREASHKO, )
Defendant. )

## ORDER

**AND NOW**, this ___3rd___ day of May, 2019, upon consideration of Defendant's

omnibus pre-trial motion in the nature of a motion to suppress, and after hearing on

the same, for the reasons set forth in the foregoing memorandum, it is **ORDERED**

that the motion be and hereby is **GRANTED**. All evidence obtained subsequent to

Defendant's exit from his vehicle during the traffic stop conducted on September 27,

2017, hereby is **SUPPRESSED** and shall be inadmissible at trial.

By the Court:

_____, P.J.
James J. Panchik

2019 MAY -6 PM 1:46

BRENDA C. GEORGE
PROTHONOTARY AND
CLERK OF COURTS
ARMSTRONG COUNTY, PA

LEFT FOR ENTRY
OR FILING

IN THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA)
          )
   vs.      )  No. CP-03-CR-0000122-2018
          )
DENNIS KREASHKO,    )
    Defendant.   )

# <u>RULE 1925(a) OPINION</u>



LEFT FOR ENTRY
OR FILING

2019 JUN 25 PM 3:54

BRENDA C. GEORGE
PROTHONOTARY AND
CLERK OF COURTS
ARMSTRONG COUNTY, PA

IN THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA )
                              )
          vs.                  )     No. CP-03-CR-0000122-2018
                              )
DENNIS KREASHKO,            )
          Defendant.         )

# RULE 1925(a) OPINION

**PANCHIK, P.J.**

The Commonwealth of Pennsylvania appeals from this Court's order entered May 6, 2019, which suppressed certain evidence obtained during and after a traffic stop of Defendant's vehicle on September 27, 2017. The Court set forth in detail the findings and analysis supporting its decision in a memorandum filed contemporaneously with its suppression order. The Commonwealth filed a timely notice of appeal on June 4, 2019, after which the Court directed the filing of a Rule 1925(b) Concise Statement. The Commonwealth timely complied on June 12, 2019. The Commonwealth raises two issues in its concise statement.

In its first issue, the Commonwealth asserts that the Court erred "when it did not deem the defendant's issues waived after he failed to timely file his omnibus pretrial motion." To address this issue, the Court must review briefly the procedural history of this case. The criminal complaint was filed on or about September 22, 2017. A preliminary hearing was conducted on February 13, 2018. On March 29, 2018, the Commonwealth filed the criminal information, which charged Defendant with several drug-related offenses. Defendant entered a written

waiver of arraignment on April 2, 2018. He then filed his motion to suppress on May 16, 2018.

The Court thereafter entered Defendant's Criminal Case Management Order ("CMO"), which provided that "[t]he Court, on its own motion, may dismiss an omnibus pretrial motion if it is not filed at least fifty (50) days before the jury selection date set forth above." (CMO, 6/4/2018, ¶ 3). Approximately five weeks later, and approximately two months after Defendant's suppression motion had been filed and scheduled for hearing, the Commonwealth filed a Motion to Quash the suppression motion, arguing that the motion was filed 14 days past the deadline established by Pa. R. Crim. P. 579. On July 19, 2018, the Commonwealth moved to continue the hearing on the omnibus pretrial motion, which the Court granted. On July 26, 2018, the Commonwealth requested leave to withdraw its motion to quash, which the Court granted by order entered July 31, 2018. The Court again continued the hearing on August 27, 2018, November 26, 2018, and January 30, 2019. The Court conducted the omnibus hearing on March 7, 2019.

The Commonwealth argues that the Court should have deemed Defendant's issues to be waived because the motion to suppress was filed more than 30 days after the entry of Defendant's written waiver of arraignment. The Court disagrees. First, the Commonwealth withdrew its motion to quash on these grounds, waiving any objection it had to the Court's consideration of the issues raised. Second, the CMO entered by the Court extended the deadline for filing any omnibus pre-trial motions up to 50 days prior to the date set for trial, after which the Court could

dismiss *sua sponte* any untimely motions. Defendant's motion was filed well within that time period. Accordingly, the Court did not err in not deeming Defendant's suppression issues to be waived.

The Commonwealth states its second issue as follows, verbatim:

The Court erred when it suppressed the evidence in this matter, finding that the defendant had been unlawfully detained. The evidence in this matter was not found on the defendant, but rather in the defendant's vehicle which--due to its being improperly licensed-- was lawfully detained and, pursuant to the request and consent of the defendant, was lawfully searched. And in the alternative, because the vehicle was lawfully detained and would have been towed and subjected to an inventory search, the evidence was also the product of inevitable discovery.

(Concise Statement, at ¶ 2).

The Court set forth its findings and analysis in its prior memorandum and supplements that analysis here only to the extent necessary to address the Commonwealth's issues. First, nowhere in its statement of this issue does the Commonwealth argue that either of the officers involved in this case had any suspicion, reasonable or otherwise, of criminal activity to support a continued detention of Defendant after the initial traffic stop had been concluded. Second, the Commonwealth's assertion that no evidence was found on the Defendant's person clearly is false. The officers found a large wad of cash in Defendant's clothing after they removed him from his vehicle and patted him down for weapons, which they did not find. Third, the Court found, based on the only live witness that the Commonwealth could produce, that the reason for the detention of Defendant was Deputy Gahagan's belief in the "possibility" that something criminal was going on.

3

The Court specifically found Officer Antal's testimony at the preliminary hearing to be not credible, particularly since defense counsel never had the opportunity to cross-examine him in light of Deputy Gahagan's contradictory testimony offered more than a year later. The decision to detain Defendant's vehicle was made after Defendant already had been detained. The Commonwealth has offered no argument that the detention of Defendant was lawful, and for that reason, it is entitled to no relief on appeal on its first issue.

The Commonwealth argues in the alternative that, because Defendant's vehicle otherwise would have been detained, impounded, and subjected to an inventory search, the incriminating evidence in the trunk inevitably would have been discovered. The Commonwealth did not raise, brief, or present any testimony regarding this issue prior to filing its concise statement. This Court therefore made no findings and performed no legal analysis regarding inevitable discovery. Nevertheless, the Court will address the Commonwealth's argument herein because it finds it to be without merit in any event.

The "inevitable discovery" doctrine provides for the admission of certain otherwise illegally-obtained evidence if:

> [the] evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. . . . [I]mplicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.

> If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.

4

*Commonwealth v. Gonzalez,* 979 A.2d 879, 890 (Pa. Super. Ct. 2009)(citations omitted); *See also Commonwealth v. Bailey,* 986 A.2d 860, 862-863 (Pa. Super. Ct. 2009).

With regard to the "inventory search" that the Commonwealth argues would have been performed, the fact of such an inevitable search is not established in the record. Officer Antal testified at the preliminary hearing that he asked Defendant to step out of the vehicle because it was going to be removed from the scene by a tow truck. (Court Ex. "1," at 10:8-12). The Court found this stated justification for removing Defendant from his vehicle to be contradictory to Deputy Gahagan's testimony and, therefore, not credible. Nevertheless, even assuming that the vehicle would have been towed away as a matter of course because of an invalid registration, Officer Antal further testified:

Q.    What if anything else did you learn from Mr. Kreashko?

A.    He had prior charges for Possession with Intent to Deliver Narcotics, and he was out on bond for those charges.

Q.    Did Mr. Kreashko volunteer this information to you?

A.    Yes, that's what he told me after I asked him.

Q.    What did you do next? Based upon his statements and the money you found, did you ask him again about his car?

A.    I did. I then again asked him if he had anything illegal inside of his car, and he stated no. I also advised him that I would -- I am impounding his vehicle until I can obtain a search warrant for his vehicle based on the large amount of money and his previous charges for drug delivery.

Q.    Did you search the car?

A.    I didn't.  Well, after I advised him of that he said search the car.

(Commw. Ex. "1," at 12:3-25).   Either Officer Antal or Deputy Gahagan at some

point contacted "Jim's Towing" to come and retrieve Defendant's vehicle.  (*Id.*, 57:3-

58:16).  There is no evidence in the record establishing the standard policy followed

by Gilpin Township Police Department for conducting inventory searches of

impounded vehicles.  It also is clear from Officer Antal's testimony that such a

routine inventory search was not going to be conducted without a search warrant,

which he intended to procure based on the money found on Defendant's person and

Defendant's statements about his criminal record.  The Commonwealth therefore

has failed to establish the necessary elements of the inevitable discovery doctrine in

that it has failed to establish that an inventory search independent of the original

illegality would have been conducted and the incriminating evidence found.

For these reasons, and based on the findings and analysis set forth in the

Court's May 6, 2019, memorandum, I recommend affirmance on the issues raised in

the Commonwealth's Concise Statement.

By the Court:

Dated: 6/25/19

James J. Panchik, P.J.

6